**In re Rick D. COSSEY, Debtor.**

**Bankruptcy No. 92–42161M.**

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

July 7, 1994.

Ron L. Goodman, Little Rock, AR, for debtor Rick D. Cossey.

Keith L. Grayson, Little Rock, AR, for Cheryl Potter.

Richard L. Ramsay, Trustee, Little Rock, AR.

Eugene Fitzhugh, Little Rock, AR.

## ORDER

JAMES G. MIXON, Chief Judge.

On January 31, 1994, this Court, *sua sponte*, issued an order for Ron L. Goodman (Goodman) to appear and show cause why he should not be sanctioned for violation of Bankruptcy Rule of Procedure 9011 and/or referred to the Arkansas Committee on Professional Responsibility for preparing and filing a bankruptcy petition containing false statements. A hearing on the order to show cause was held on April 21, 1994.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (1988), and the Court has jurisdiction to enter a final judgment in the case.

## BACKGROUND

The debtor married Cheryl Anne Cossey Potter (Potter) on August 25, 1979, and in 1984, while married to Potter, the debtor suffered an injury on a construction job in the state of New York. As a result of the injury, the debtor and Potter filed a lawsuit, which ultimately resulted in a structured settlement agreement. During the time that settlement negotiations were being conducted, the debtor and Potter filed for divorce. On August 11, 1989, their divorce decree was entered. The divorce decree incorporated a property settlement agreement which provided that the debtor and Potter would "divide equally the proceeds of the New York lawsuit."

Approximately three months after the divorce decree was entered, the debtor and Potter reached a settlement with the defendant in the New York lawsuit. On November 18, 1989, the debtor and Potter entered into an agreement regarding the proceeds of the lawsuit settlement that provided as follows:

In consideration of the execution of the settlement agreement by Cheryl Cossey, Rickey Cossey agrees to pay Cheryl Cossey one-half (½) of the sum received by him of $715.13 a month, increasing by three percent (3%) per year, and one-half (½) of the $30,000.00 initial payment payable within 48 hours of receipt of payment to

him paid by Transportation Insurance Company. If Rickey Cossey fails to make payment within 48 hours of receipt of the check, then the failure operates as an assignment of one-half (½) of all future checks and this assignment may be presented to Transportation Insurance Company and shall operate as instructions to pay all future installments in separate equal checks, one payable to Cheryl Cossey and one payable to Rickey Cossey.

The settlement of the lawsuit consisted of an agreement whereby the debtor and Potter were to receive an initial lump sum payment of $155,000.00. Thereafter, the debtor and Potter were to receive monthly payments of $715.13 for the debtor's life, with the first 240 payments being guaranteed. The monthly payments were to increase 3% each year. In addition, the debtor and Potter were to receive three future lump sum payments in the amounts of $25,000.00 in 1994, $50,000.00 in 1999, and $125,000.00 in 2014.

The initial payment of $155,000.00 was paid to the debtor and Potter, $125,000.00 of which was disbursed to their attorneys with the remaining $30,000.00 being divided between the debtor and Potter. The debtor was to receive the payments under the settlement and was obligated to remit Potter's share to her. The debtor paid Potter one-half of the monthly payments received from the settlement date through March 1993, at which time the debtor ceased making the monthly payments to Potter.

The debtor testified that in August 1992, he sought legal assistance from Goodman to resolve three legal problems: his financial problems, his child support arrearage, and his desire to dissolve the property settlement agreement he made with Potter. Goodman testified that the debtor sought his legal advice initially due to his financial problems because one of his creditors was asserting a deficiency judgment against him.

On September 2, 1992, the debtor, after consulting with Goodman, filed a voluntary petition for relief under the provisions of Chapter 7 of the United States Bankruptcy Code. The petition was prepared by Goodman and listed total assets of $47,970.00 and total liabilities of $48,011.66. The debtor's

petition indicated that he had eight creditors. The insurance settlement was listed in the debtor's schedules under personal property as follows:

> Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled.
>
> Insurance settlement
> Debtor's interest:      379.00
> Total debt on property:      0.00
> Possession: In debtor's possession.

The first meeting of creditors was held on September 29, 1992. Goodman did not attend the first meeting of creditors, but instead the debtor was represented by Goodman's associate, Mike Lewis. On October 5, 1992, the trustee filed a no asset report.

The debtor reaffirmed his debts with four of his eight creditors, thereby reaffirming $37,289.46 of his total liability, which represents over 75% of the total liabilities listed in his bankruptcy petition. On December 14, 1992, the debtor appeared at a hearing at which the four reaffirmation agreements were approved. The debtor's discharge was granted on December 22, 1992, and the case was closed on December 28, 1992.

On April 30, 1993, the debtor, through new counsel, filed a motion to reopen the case to add Potter as a creditor and to determine that the debtor's debt to Potter is dischargeable. On July 15, 1993, Potter filed an adversary proceeding to revoke the debtor's discharge and to determine the dischargeability of her debt. A trial on the merits of Potter's complaint and on the issue of the dischargeability of Potter's claim was held on December 17, 1993.

At the December hearing, the debtor testified that during his initial meeting with Goodman he gave Goodman all the documents regarding the insurance settlement, including a copy of the settlement agreement, and further testified that he and Goodman specifically discussed the settlement agreement. The debtor also testified that Goodman prepared the bankruptcy petition, and when he signed the petition he assumed Goodman had prepared the petition correctly.

Also at the December hearing, a pleading styled, "Motion to Abate Alimony" was introduced. The motion was filed in state court on February 12, 1993, and was signed by Goodman on behalf of the debtor. The motion alleged that the debtor's benefits "will continue for a number of years with the total payout to be in excess of $500,000.00." This motion was prepared by Goodman less than six months after Goodman prepared the debtor's bankruptcy petition representing that the same benefits had a value of only $379.00.

The debtor testified that one of the reasons he initially consulted Goodman was to terminate the agreement he had with Potter. At the April 21, 1994, hearing the debtor reasserted that he told Goodman about the divorce and the insurance settlement "from the very first day." The debtor testified:

Q: Mr. Cossey, I believe you just stated in maybe not so many words that you indicated to Mr. Goodman that you had a large settlement which was coming to you by way of an injury that you had incurred earlier.

A: Yes, sir.

Q: You're saying that should have been reflected within your divorce decree, and that's what you showed to him, and that's how he should know about it.

A: It's listed in the divorce decree, and he had a copy of that, and he also had a copy of the settlement after the first day I went into his office.

Record at 19.

Goodman testified that the first time he was aware of a lump sum settlement being due the debtor was in January 1993. Goodman's testimony at the April 21, 1994, hearing regarding the lump sum payment was as follows:

Q: Obviously, we're here today in regard to a large lump sum settlement which Mr. Cossey was to receive. When was the first time that you had knowledge of such a lump sum settlement?

A: I don't know the exact date but it was in January of '93.

Q: Were you aware of any settlement amount that he was to receive, or any

portion of any amount of money that he was to receive during the time you filed the bankruptcy for him?

A: Yes, when we were inquiring as to his monthly income, he stated that he received a disability income in the amount of—and I don't remember the exact amount, to tell you the truth. And we listed it on his petition as an insurance settlement, I believe, monthly income.

Record at 8.

Goodman testified that after the debtor received his discharge, his bankruptcy file on the debtor was closed and placed in a closed file cabinet. Goodman stated that by February, when he filed the Motion to Abate Alimony in state court, he had learned of the true value of the settlement; however, he did not connect the two cases and it never occurred to him to amend the bankruptcy schedules.

## DISCUSSION

Under 11 U.S.C. § 541(a) (1988), the debtor's bankruptcy estate includes, "all legal or equitable interests of the debtor in property as of the commencement of the case." The debtor's insurance settlement is property of the estate and should have been scheduled. 11 U.S.C. § 541(a) (1988). *See In re Young,* 93 B.R. 590, 593 (Bankr.S.D.Ohio 1988).

■ Bankruptcy Rule of Procedure 9011 closely follows the language of Rule 11 of the Federal Rules of Civil Procedure. The rule provides in parts relevant to the facts of this case that "the signature of an attorney ... constitutes a certificate that the attorney ... has read the document; that to the best of the attorney's ... knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument...." The Bankruptcy Court is empowered to impose sanctions on an attorney for violations of Rule 9011. *See Grunewaldt v. Mutual Life Ins. Co. (In re Coones Ranch, Inc.),* 7 F.3d 740, 743 (8th Cir.1993); *Brown v. Mitchell (In re Arkansas Communities, Inc.),* 827 F.2d 1219, 1221–22 (8th Cir.1987).

■ Sanctions are imposed for pleadings not well grounded in fact and law after rea-sonable inquiry. *Bradgate Assocs., Inc. v. Fellows, Read & Assocs., Inc.,* 999 F.2d 745, 752–53 (3d Cir.1993). Rule 11 imposes "an affirmative duty to conduct reasonable inquiry into the facts." *Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 551, 111 S.Ct. 922, 933, 112 L.Ed.2d 1140 (1991). The legal standard for alleged violations of Rule 11 is "reasonableness under the circumstances." *Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. at 551, 111 S.Ct. at 933.

■ The evidence before the Court is convincing that when Goodman prepared the debtor's bankruptcy petition he knew the correct value of the insurance settlement. The evidence is also convincing that Goodman knew that he was representing the value of the insurance settlement in a misleading manner. The debtor testified specifically that during his initial meeting with Goodman he gave Goodman a copy of all relevant documents, including a copy of the settlement agreement, and that they discussed the settlement agreement.

The debtor's testimony is corroborated by the debtor's circumstances. Other than Potter's claim to one-half of the insurance settlement, the debtor had no meaningful creditor problems. Out of the total liabilities scheduled of $48,011.00, the debtor reaffirmed liabilities totaling $37,289.46. Under these circumstances, it would have been pointless for the debtor to fail to disclose the terms of the insurance settlement to Goodman.

Goodman testified that all he knew at the time he prepared the bankruptcy petition was that the debtor was receiving a disability income, which he listed on the petition as other income. However, Goodman listed the same insurance settlement as personal property and claimed this property as exempt under 11 U.S.C. § 522(d)(11)(E) (1988). Scheduling the insurance settlement as an exempt asset is inconsistent with Goodman's characterization that the debtor was only receiving $379.00 in disability income.

■ Even if the Court were to accept the testimony of Goodman as truthful, his actions in this case would still warrant sanctions

under Bankruptcy Rule 9011. Since Goodman knew of the existence of some type of insurance settlement, he was under an affirmative duty to make a reasonable inquiry into the true nature of the settlement so that the bankruptcy petition would be accurate. A minimal inquiry by Goodman would have disclosed the terms of the structured settlement agreement and its true value to the debtor.

In addition, Goodman acknowledged that by January 1993 he was fully aware of the details of the settlement. Therefore, by January 1993, Goodman was under an affirmative duty to amend the bankruptcy schedules to reflect the true value of this asset, which he failed to do. The insurance settlement has a present value sufficient to pay the debtors' dischargeable debts in full, including interest, and still leave the debtor a substantial balance.

The Court believes that Goodman knowingly and intentionally omitted scheduling the insurance settlement accurately in order to promote some unknown advantage for himself or his client. Even if the Court is mistaken in its belief, Goodman failed to use reasonable inquiry to determine the true nature and value of the insurance settlement and failed to amend the schedules when he did become aware of the value of the settlement. Goodman's actions violate Bankruptcy Rule 9011 and warrant sanctions.

The Court announced in open court that it intended to impose sanctions in the sum of $5,000.00. This sum was the approximate amount of the claims that were discharged by Goodman's wrongful conduct. Upon reflection, however, this sum may be excessive. The trustee has reopened the case and the unsecured creditors probably will be paid in full. Under these circumstances, Goodman is assessed a fine of $500.00 payable to the Clerk of the Bankruptcy Court. A copy of this opinion will be forwarded to the Arkansas Committee on Professional Responsibility as a judicial complaint against Goodman.

IT IS SO ORDERED.